L.L.C. Arguments not to exceed 15 minutes per side. Mr. Kelly for the appellant. Good morning. May it please the court. Kyle Kelly. I'm here on behalf of the  appellant. I'd like to reserve five minutes of my time for rebuttal. All right. Your Honor, this is an employment discrimination case as you know. The essential dispute we're here today to hopefully resolve is what constitutes a job duty for purposes of Michigan's Persons with Disabilities Civil Rights Act and how do we determine what job duties are. Now in this case Ms. Szasz was an assistant manager of a location in Michigan. She was involved in an automobile accident, injured her neck, injured her wrists, and as a result of that had a couple restrictions once she came back from FMLA leave. She could not lift more than 40 pounds. She could not work more than four hours in a day. Her employer, Dollar General, decided it could not accommodate those restrictions and terminated her employment, at which point the suit began. Now our contention is that Ms. Szasz was able to perform her job duties, at least her essential job duties, with her restrictions. Her job description... Don't we have to give substantial deference, I believe it is, to the employer's judgment as to what essential job duties or essential job functions are? Yes, we are, Your Honor, but substantial. And how did the District Court fail to do that below? I do not think the District Court took in any other factors aside from the employer's judgment. The Persons with Disabilities Civil Rights Act is an anti-discrimination statute. To allow employers to be the sole judge of anything completely guts the purpose of that act, which is to protect the employees. Substantial deference is not the same as sole judge, is it? Absolutely, Your Honor. So you're saying that the judge didn't look it up. What other factors did the judge fail to look at? Well, there are any number of factors. The PW DCRA does not give much guidance when determining that, which is why we have continually cited the EEOC regulations, which there is case law in Michigan that courts have declined to Those ADA guidelines are, absent any other guidance, I believe the best guidance we have. And if the District Court had considered any other factors either then, these are the job duties as the employer says they are. Which, by the way, Your Honors, the District Court relied heavily upon a declaration of a Jennifer Unger. Now that declaration was dated the same day that the motion for summary disposition was filed. Meaning it was a document created specifically for that motion. In fact, Ms. Unger, I checked this morning, did not appear by name on Dollar General's witness list. So Ms. Unger was never cross-examined as to the declaration she made in that affidavit slash declaration. And I understand that a document like that, a sworn document, will have persuasive value to rely solely on that document and say this document says the employer What was her position in the company? I'm sorry, Your Honor, I didn't hear you. Ms. Unger, what was her position in the company? She was a district sales manager, I believe. Some kind of district manager. And she, in her declaration she stated that she had knowledge of the day-to-day store operations and we don't have any way to dispute her knowledge. But, to hold that... Is there something in the declaration that you think is inaccurate or deficient? Yes, because in the declaration Ms. Unger says what the job duties are. It says that this particular job requires the lifting of 40 pounds and she lists several specific duties that she does not believe Ms. Zazz could perform. But Ms. Zazz in her own testimony, this was the only testimony of an employee actually on the ground, stated that she could perform her duties. I thought the job requirement was to lift 40 pounds regularly and up to 55 pounds. Is that right? It's listed in the job description. Now, if that's in her job description, what would be your basis for disputing the accuracy of that or that that requirement does exist for the position? Because I don't believe that's an essential part of the job. Well, you don't, but you don't dispute that the employer believes or at least has stated in the job description for the position that they think that's an essential function for the job. At least you would conceive that much. Not as to essential, Your Honor, because the job description, if you look at it, it contains 17 bullet points that are listed as essential job duties and then several dozen other bullet points after that. In the 17 marked as essential, that lifting requirement is not included in those. It is included in the other, I'm not going to label them non-essential, but in the other bullet points that are not identified as essential. So I do dispute whether or not the lifting was essential. You're saying they have two lists of job duties, one for essential duties and one for non-essential. Is that what you're saying? It's all the same list, but there's part, it's all the same job description, but part of it is listed as essential. And then there are other duties. So it's not essential for the person to have to lift up to 40 pounds and occasionally up to 55 pounds. That's not essential, that's what you're telling me? That is plaintiff's contention, Your Honor, and her testimony is that the only... I don't want to get to plaintiff's, I want to know what the record below says. Because what I understand is that the essential job function included frequent and proper lifting of up to 40 pounds and occasional lifting of up to 50 pounds. Are you telling me as a matter of fact that's incorrect? I would like to double check before I tell you as a matter of fact, Your Honor. If you can't find that, you could look for it and present it when you come back for rebuttal. I will do that, Your Honor. I just want to make sure. I do know that not needing to work more than four hours a day is not included in that essential function. But regardless, the plaintiff testified that the only item that she had to lift that weighed more than 10 pounds was bags of dog food, and she had to do that so infrequently she cannot remember the last time she had to do it. I thought there was a need for lifting of heavier items when the trucks came in for restocking, and occasionally she would be the only employee there or at least would be one of the ones who would have to participate in unloading the truck and stocking the shelves with the heavier items and that kind of thing. Well, she testified that the truck drivers themselves would do the unloading, and during the occasions when she was the only one in the store, she couldn't be in the back unloading because she would need to be in the store. She had to restock the shelves nonetheless. She had to restock the shelves, but there is any number of products that she could have restocked with her lifting restriction, and if there were a few very heavy items that she could not restock, it would have been a simple matter of waiting for another employee to come in to put those on the shelves. The store, in any store, the majority of the items are relatively small, and just because a handful weigh more than 40 pounds doesn't mean that the one employee who happens to be there has to restock them at that given time because, again, if she's the only employee at the store, she most likely is not going to be restocking shelves. She's going to be assisting customers. She's going to be at the register checking them out. She is going to have to be watching the store. She can't be in the back stocking items. That's why when there was ever stocking, and she testified to this, there would be two employees there. That way one person could be in the front watching the store, assisting the customers, and the other one could be in the back performing the stock. So if there came a time when she had to lift very heavy weights, then she could have been at the front of the store, and the other employee could have been the one stocking that. But, again, even if we accept that the lifting requirement is a part of the job, to say that solely because of that she cannot be accommodated is one of those requirements that would give the employer all the power in that situation. So if an employee has any kind of a lifting restriction, then they cannot perform a job as long as... The employee in this case, though, is not saying anything different than is articulated in the essential job function. Isn't that right? Because Unger is merely the employer's representative who at trial, in her declaration, stated what was already stated in the essential job function. The plaintiff knew what the essential job functions were when she signed on for the job, so it's not like this is some kind of post hoc rationalization. Is that right? That is right, but the plaintiff's testimony, her job as she performed it, conflicts with the job duties as stated and the declaration of the corporate representative, so it would have to be explained under cross-examination, and, frankly, this is their motion. So plaintiffs should get the facts drawn in her favor. And my time is up, Your Honors. Thank you. Thank you. Good morning. Good morning. My name is Keith Frazier. I'm here on behalf of Dolgen Corp., who you will hear me refer to as Dollar General because that's what the retail stores go by, and it's a little easier to say. Dollar General, as a matter of background, has a chain of small box discount retail stores. We learned in this case that at least at the time in question there were 350 in the state of Michigan. We learned that because one of the requirements we were asked to do, based on a motion to compel, was to contact all 350 stores and ask two questions. The first question is, do you have an assistant manager who works part-time? The answer was no. Do you have anyone for whom you waive the lifting restrictions? The answer to all 350 was no. That's the job. The job in this case requires, it's a thinly staffed store, and these stores, again, the assistant manager, and in this situation it's a non-exempt hourly position, but at times the assistant manager is the only person in the store. Mr. Frazier. Yes. If the assistant manager is the only person in the store, then the likelihood is that that assistant manager, as Mr. Kelly pointed out, is not going to be lifting stuff in the back or restocking shelves but work. And I shop at Dollar General, so I kind of have a practical sense of how this goes. So the assistant manager is likely going to be working the cash register. Isn't that true? It's true up to a point, Your Honor. They would not likely be stocking. How about up to a point of reasonable accommodation then? Well, let me, if I can finish my answer. If it's the only person working, if you have been to a Dollar General, you know that they have a lot of product out on the sidewalk. And Ms. Zaz testified that when she opened, she opened alone. It was her responsibility to take the stuff, the product, out onto the sidewalk. Some of those items weighed more than 10 pounds, and it was her responsibility to bring it back in. The other place and place where when they're working alone it becomes significant is a lot of customers at Dollar General are elderly or they may have some type of disability of their own. They can't lift a case of water. They can't lift a bag of dog food. And as part of the customer service, the manager has to be able to do that. The manager, if a customer needs assistance putting a bag of dog food in their cart, they have to be able to do that. If they're buying a case of motor oil, that manager has to be able to lift it. Every employee in the store has to be able to do that. And even when there are two individuals in there, if one individual is operating the cash register, that person, when they're operating the cash register, still is responsible if there's no one in the store for doing recovery, for stocking while they're standing up there. There's not someone in line at all times. So while they may not be doing the traditional function of taking the boxes out and stocking, there are still lifting requirements that are essential while they're working the cash register, while they're working alone. They may not all be 40- and 55-pound lifting requirements. What's the meaning of reasonable accommodation, Mr. Frazier? Well, Your Honor, in this situation, the lifting restriction was 10 pounds for her. I think that Ms. Zoss could do the 10 pounds, couldn't she? No. If you can't lift 10 pounds, you certainly can't lift 40 pounds. So her lifting restriction was she could not lift more than 10 pounds. And there were multiple items that an individual in that position has to be able to lift. They have to be able to lift the dog food. They have to be able to lift the cases of oil. They may be taking chairs out front. They may be taking umbrellas out front. There are a substantial number of items in that store that weigh 10 pounds. But she had a 10-pound lifting restriction, which meant that she couldn't, which I read to mean that she couldn't lift over 10 pounds. That's correct. And so, you know, if, for example, her lifting restriction was 50 pounds, we might have a different analysis of going through everything that's 50 pounds, and the company might have to take a more stringent look at whether an accommodation could be made for a 50-pound lifting restriction. Well, in your view, then, a reasonable accommodation would mean if she could meet all of the basic essential job functions. She could lift at least 40 pounds. That's not the issue before this court, and I would have to make that statement. The three of us know the issue before this court. I understand. But what we want you to do is answer the question. Well, I believe that they need to be able to lift 55 pounds. There are products in that store that are 55 pounds, and every person in that store, even though it's an occasional requirement, that it's something they have to be able to lift. Mr. Frazier, I'm constrained to ask you again. Okay. Does reasonable accommodation mean that she has to be able to lift at least 40 pounds? Yes. If she cannot lift at least 40 pounds, then she is not a qualified individual for that job. When you look at the court's decision, Mr. Kelly stated that the judge simply took Dollar General's word for it. I would like to note that the judge specifically noted that Plaintiff acknowledged in her deposition that assistant store managers work full-time rather than part-time because defendant needed somebody there to watch over the store. Plaintiff also acknowledged that in her position as an assistant store manager, Plaintiff was responsible for working alone at times and handling all tasks in the store, including opening and unpacking cartons and totes and stocking and storing the merchandise. What Ms. Zaz is asking this court to do is to completely change the dynamic of a Dollar General store, to completely change how that store operates. As Judge Marbley, as you noted earlier, in the state of Michigan, the standard is the employer is entitled to substantial deference with the assumption that an employer is going to set job duties that allow that employer to be successful. It is the responsibility of the plaintiff to come forward with evidence that shows that that standard is unreasonable. And there is no such evidence in this case. The evidence before the court clearly shows that lifting is a part of the job. And again, while it's 40 pounds, Judge Marbley, the point that you keep making, in this case, the more specific inquiry is an individual who could only lift 10 pounds and only work four hours a day based on the evidence before the court, a qualified individual with a disability. It is Dollar General's position that that person is not. Well, at the end of the six-week period, the doctor, she resubmitted a form saying that she could work up to eight hours a day but maintaining the 10-pound limit. So your position is that even with the additional hours, the lifting restriction is her Achilles' heel? That is correct, Your Honor. The lifting restriction is the key issue in this case. And so we would ask that the judgment below be affirmed. One final question here. Was she asking for this accommodation of no more than 10 pounds as a permanent arrangement or was this a temporary request during some period of recovery or rehabilitation from her injury? What was the nature of what she was asking for? Well, that's a good question, Your Honor, because it raises another issue that I'd failed to raise, is under the PWD CRA, it is the responsibility of the individual to request an accommodation in writing. Ms. Zaz at the time never made a request for accommodation. The only request for accommodation came, she did notify them of the restrictions, but the only request for an accommodation came almost a year or maybe slightly over a year after she was terminated. Now, the reason that the company gave the six-week additional time was to see if her condition could improve. She did not make a request. And, in fact, in July 2013, when her deposition was taken, her restrictions were still in place. So there was never a request made saying, I think if I can have five more weeks, I can come back. There was no request at all. All right. Okay. Thank you. Rebuttal. Thank you, Your Honors. I did double-check, and I apologize for second-guessing myself. But on the job description, there are 17 bullet points listed as duties and essential job functions, and the lifting requirement is not one of them. The lifting requirement is listed a couple sections later. It's listed under a section called Working Conditions and Physical Requirements, and that's where it says frequently 40 pounds and occasionally 55 pounds. So to go back to your earlier question, Judge Clay, we do dispute the essential requirement of the lifting requirement because it's not listed under their own job description in the essential duties. And Ms. Zass testified that she was able to perform all of the essential duties, things like opening the store, handling the money, assisting the customers. Those were her primary jobs. And just because occasionally she may have been called upon to lift something heavy doesn't make that particular duty an essential part of being an assistant manager. Is it your position, then, that there's a genuine issue of material fact as to whether lifting up to 40 pounds is an essential job function? That is precisely my question. Is that a mixed question of law and fact? I believe that's mostly a question of fact, and there's going to be a dispute between, as we see in their declaration, what Dollar General Corporate says is required on a day-to-day basis at the store and what the actual employee testified that she did on a daily basis. By saying, and Mr. Fraser said it, by having a hard 40-pound lifting restriction as an absolute requirement allows Dollar General to draw a line in the sand, and anyone who cannot lift that amount, even if they're not called upon to do it in actuality or called upon to do it very infrequently, that allows them to get around any kind of disability statute. And the same requirement, they could, frankly, make up nearly anything they wanted to. Well, do you concede that to do the job successfully, your client at a minimum would need to be able to lift more than 10 pounds to work there successfully? I don't believe so. I don't believe so because the vast majority, as Judge Marbley pointed out, of items in a Dollar General are going to be small. They're going to be 10 pounds. Well, but not all of them are small. Not all of them. But just because there may be a handful of items doesn't mean that she cannot perform the majority or almost all of the tasks of the job. And to perform a job successfully, I don't think you have to be required to fulfill every conceivable eventuality that that job may eventually require. I want to go back to one of Judge Clay's earlier questions to Mr. Frazier, which was how long is the plaintiff going to labor under the 10-pound lifting restriction? Is there a factual record as to that question? I don't believe so, Your Honor, because she was terminated and she never went back to her doctor for an evaluation of her disability. But the idea is that she was injured in a car accident, and the idea was hopefully that she would recover from her injuries. She did not break her back and was permanently in a wheelchair or anything. Of course, you didn't present anything in connection with the motion for summary judgment to indicate that your client was on the verge of recovery or would be infirm only for a concise period of time. I mean, you didn't make that argument in connection with the summary judgment motion. As best I know, isn't that right? That's correct, Your Honor, because, frankly, I don't think we knew that at that time. It was a recovery process. But even then, whether or not she is disabled under the statute, I don't think has a temporal requirement. At the time she was terminated, she had physical restrictions that I think qualify her for disabled status under the Person with Disability Act. And the trial court's decision, I think, hinged on these job duties. So whether or not she would have recovered, I mean, we all hope she would have, but I don't think we had any hard evidence that she will be back to normal in four months, six months, eight months, whatever it was. But I don't think that has bearing on whether or not she was disabled at this time. And just to briefly address... Is your client still disabled as of today's date? I'm honestly not sure of that, Your Honor, as of today's date. Is your client employed anywhere right now? I'm not sure of that either, Your Honor. Don't you think that's something you should have found out before coming in for this argument? Well, perhaps, but I deny, Your Honor. All right. My time is almost up. Thank you very much. Okay, thank you. Case is submitted.